Steve **FRAZIER** and wife, Dolores
Frazier, Appellants,

v.

**FRONTIER STATE BANK** and Richard
G. McInnis, Appellees.

No. 04–90–00422–CV.

Court of Appeals of Texas,
San Antonio.

July 31, 1992.

Arturo C. Gonzalez, Gonzalez, Gonzalez
& Gonzalez, Del Rio, for appellants.

W.D. Seyfried, III, Franklin D. Houser,
Tinsman & Houser, Inc., San Antonio, Guy
I. Wade, III, John C. Eichman, Jenkens &
Gilchrist, P.C., Dallas, for appellees.

Before BUTTS, CARR and GARCIA, JJ.

OPINION

BUTTS, Justice.

Steve and Dolores Frazier filed suit
against Frontier State Bank and Richard G.
McInnis. The trial court entered a directed
verdict in favor of the defendants ordering
that the Fraziers take nothing on their
claims and dismissing the counterclaims as-
serted by the defendants.

The Fraziers alleged that they executed
a promissory note payable to the Bank for
$267,989.85 secured by a deed of trust lien
on the Fraziers' ranch lands. When the
first note became due, it was renewed by
execution of a second note for $238,040.85.
The Fraziers further pleaded that immedi-
ately after executing the renewal note,
McInnis, president of the Bank at that
time, and Mr. Correa and Mario Jauregui,
requested that the Fraziers execute a
"Mexican Note" to satisfy bank examiners.
They assured the Fraziers that the note
would be delivered back to them after it
was shown to the bank examiners. The
Fraziers executed a "Mexican Note" for
$278,566.48. Shortly thereafter, the Bank
assigned that note for collection to Jaure-
gui, counsel for the Bank in Mexico, who
filed suit demanding payment of the "Mexi-
can Note." The Fraziers asserted that
such action constituted usury, a violation of
the Texas Deceptive Trade Practices Act,

TEX.BUS. & COM.CODE ANN. § 17.45, *et seq.* (Vernon 1987), and a breach of good faith and fair dealing.

The Fraziers petition further asserted that this was part of a scheme for the defendants to fraudulently obtain the Fraziers' ranches. They alleged that they executed a third note relying upon assurances by the defendants that they would abandon the pending Mexican litigation and release all liens against the Fraziers' Mexican real estate and livestock. The defendants, however, would not release the attachment in Mexico, thereby causing the Fraziers to immediately begin selling their livestock. The Fraziers also asserted that the defendants' actions caused them to lose their ranch property.

The suit was tried to the court. At the close of Fraziers' evidence, the defendants moved for a directed verdict, which was granted. The Fraziers' motion for new trial was overruled by operation of law.

The Fraziers raise six points of error: the trial court erred in excluding the testimony of Steve Frazier upon defendants' objection that he was not named in response to interrogatories as a witness having knowledge of relevant facts (point one); the trial court erred in not ruling on the motion for new trial and in not finding that the execution of the Mexican note for $278,556.48 and the American note for $238,040.85 on the same day constituted usury as there was only one loan (points two, five, six); the trial court erred in not finding that the bank violated the usury laws because the interest rate on the Mexican note was 24% (point three); and the trial court erred in granting the motion for directed verdict because the evidence was sufficient to show the Bank's willful and malicious intent to defraud the Fraziers of their ranches and livestock (point four).

◼ In their first point of error the Fraziers attack the exclusion of Steven's testimony because he was not listed as a party with knowledge of relevant facts. The failure to respond to a request to identify a witness having knowledge of relevant facts may result in the exclusion of the witness' testimony, unless the trial court finds that

good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record. TEX.R.CIV.P. 215(5).

The supreme court recently addressed the issue in *Smith v. Southwest Feed Yards,* 835 S.W.2d 89 (1992) and *Miller v. Bynum,* 836 S.W.2d 160 (1992). Smith, the sole defendant, personally answered interrogatories propounded to him by Southwest but failed to include his own name in response to one seeking disclosure of persons having any knowledge of relevant facts. Among his answers to interrogatories was a response which detailed the conversations he had with the plaintiff concerning the account sued upon. Holding that the trial court abused its discretion in denying Smith the opportunity to testify, the *Smith* court stated:

> Smith provided an answer to [another question] that demonstrated his personal knowledge of facts relevant to this lawsuit. In determining whether "good cause" exists to permit his testimony, the substance of his entire response should be considered, not just his incomplete reply to a single query.
>
> Our consistent construction of "good cause" for purposes of Rule 215(5) has been designed to prevent trial by ambush.... We believe that the substance of Smith's response to Southwest's discovery identified him as a potential trial witness.
>
> . . . .
>
> Permitting litigants to summon parties not so identified on the grounds that they were one among many deponents or had been indirectly referenced in some other interrogatory answer would only serve to reintroduce trial by ambush.

Under the circumstances of the instant case, where the answer to another query in a single, short set of interrogatories plainly indicated that the individual responding had knowledge of relevant facts, the trial court abused its discretion by failing to find "good cause" to permit that party's testimony.... Certainly a

more obscure or indirect identification than that involved here could permit exclusion of a party witness. Additionally, the constraints of Rule 215(5) may permit testimony by a party who is an individual not listed in response to a Rule 166b(2)(d) interrogatory, when identity is certain and when his or her personal knowledge of relevant facts has been communicated to all other parties, through pleadings by name and response to other discovery at least thirty (30) days in advance of trial. *Id.* at 91. In *Miller,* the trial court allowed a party not identified in interrogatories to testify as a fact witness regarding facts that were disclosed in his deposition. The *Miller* court held that the trial court did not abuse its discretion. The court pointed out that the fact that a witness has been deposed does not in itself constitute good cause nor does the fact that the unlisted witness is a party. However, "[a]lthough neither status as party nor the fact of a deposition are independently sufficient to establish good cause,.... these factors may combine to satisfy the good cause requirement." *Miller,* 836 S.W.2d at 162.

We initially emphasize that the present case is a suit involving a promissory note of which Steve Frazier was the maker. He answered interrogatories by identifying Dolores as a witness having knowledge of relevant facts and himself as the person or entity conducting the sale of his cattle. He also said in a response to a question, "I dealt with Richard McInnis and Mr. Correa and according to his testimony at depositions, he [McInnis] was present when I signed the two notes, American and Mexican note." Another question asked him to state every fact upon which he relied in his allegation concerning loss of money for the sale of his cattle. He responded "I had to sell at a very low price because of threats from McInnis and bank, and therefore lost approximately 1 million dollars." Further, the record reflects that Steve was deposed prior to trial.

There are only two plaintiffs in this suit, Steve and Dolores Frazier. Steve, the maker of the note, responded to interrogatories with facts of which he had personal knowledge, attended the depositions of oth-

er witness, and testified at a deposition. Considering the substance of the litigation and the pretrial discovery, we believe that Steve was identified as a potential trial witness. His testimony would in no way have constituted a trial by ambush. *See Smith,* 835 S.W.2d at 90–91. We hold that the trial court abused its discretion in refusing to allow him to testify.

■ The appellees urge that this point of error is not preserved because a proper bill of exception was not brought forward to show what the proffered testimony would have been. *See* Tex.R.App.P. 52(b). However, the substance of Frazier's testimony was included in the motion for new trial.

Further, no formal bill of exception would be needed in this case, a bench trial, to determine whether the court erred in excluding the party's testimony.

■ The trial court's exclusion of Steve's testimony was not premised upon the substance of the proffered testimony but was based upon a failure to follow a procedural rule—failing to list himself as an individual with knowledge of relevant facts. Since hearing the substance of the testimony would not affect the trial judge's decision, it was not necessary for the contents of the testimony to be reoffered to the trial court. *Cf. Jones v. Kinder,* 807 S.W.2d 868, 871 (Tex.App.—Amarillo 1991, no writ). Having found that it was error for the trial court to exclude Steve from testifying, we must next determine whether the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b). This Court can look to the entire record, including the motion for new trial, to glean the contents of the excluded testimony. *See Olson v. Harris County,* 807 S.W.2d 594, 597 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

As revealed by the motion for new trial, Steve Frazier would have testified that execution of the Mexican note was induced by the promise of the defendants that it would be delivered back to the Fraziers after satisfying the bank examiners, that the defendants filed suit in Mexico against the Frazi-

ers and obtained a writ of attachment allowing the defendants to round up the Fraziers' cattle and place them in a pen, that Steve was required to take back his cattle, that Steve was compelled to sell them at a price lower than their value, and that the defendants intentionally and fraudulently attempted to collect the Mexican note. This testimony addresses the usury claims and serves to rebut the defense that the Mexican note was used only to perfect a lien on the Frazier's Mexican property. In view of these matters, we find the trial court's exclusion of Steve's testimony was calculated to cause and probably did cause rendition of an improper judgment. Point of error one is sustained.

Our disposition of the first point makes it unnecessary for us to address the remaining points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial on the merits.